## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | 2:17-cr-00031 |
| | ) | |
| v. | ) | Chief Judge Mark R. Hornak |
| | ) | |
| ERIC CLANCY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Before the Court is Mr. Eric Clancy's Amended Motion to Vacate Sentence Under 28 U.S.C. § 2255 (ECF No. 86) ("Motion to Vacate"). Mr. Clancy argues that his trial counsel was ineffective because he "failed to file a notice of appeal notwithstanding [Mr.] Clancy's expressed desire to appeal." (ECF No. 86, at 1.)  Mr. Clancy therefore asks this Court to vacate its judgment of October 2, 2018 (ECF No. 64) and enter a new judgment on the same terms and conditions so that counsel for Mr. Clancy can "timely file a notice of appeal on his behalf." (ECF No. 86, at 12.)

Based on the record before it, the Court concludes that Mr. Clancy has not satisfied the standard that applies for the grant of the relief he requests—that is, the standard for ineffective assistance of counsel when counsel's allegedly deficient performance deprives the defendant of the chance to appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000). Accordingly, Mr. Clancy's Motion to Vacate is DENIED.

## I.   BACKGROUND

In January 2018, Mr. Clancy pleaded guilty to two counts of possession with intent to distribute heroin and fentanyl in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and to one

1

count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 925(c)(1)(A)(i). (*See* ECF No. 40.) On October 2, 2018, this Court sentenced Mr. Clancy to concurrent terms of imprisonment of 30 months at each count of possession with intent to distribute and a single consecutive term of 60 months for the firearm possession in furtherance of drug trafficking count, to be followed by a 6-year term of supervised release. (ECF Nos. 62, 64.) Judgment was entered on the docket that same day. (ECF No. 64.) No notice of appeal was filed on Mr. Clancy's behalf within the 14-day window specified in Federal Rule of Appellate Procedure 4(b)(1)(A)(i), nor has any been filed to date.

On January 3, 2019, Mr. Clancy filed a *pro se* § 2255 motion alleging ineffective assistance of trial counsel for failure to file a notice of appeal. (ECF No. 67.) This Court issued a "Miller Notice"[1] on January 23, 2019, and Mr. Clancy timely filed his response on February 8, 2019, electing to file an amended petition, which he did on February 11, 2019. (ECF Nos. 69, 71, 72.) Mr. Clancy was appointed counsel from the Federal Public Defender's office on March 22, 2019. (ECF No. 74.) This Court then entered an order directing Mr. Clancy's newly appointed counsel to file any further response to the Miller Notice by April 22, 2019. (ECF No. 76.) After requesting two extensions of time which this Court granted in turn, Mr. Clancy's counsel timely filed a further response to the Miller Notice on August 1, 2019, indicating that she would file an amended § 2255 petition seeking reinstatement of Mr. Clancy's appellate rights. (ECF Nos. 77–78, 82–84.) This

---

[1] *United States v. Miller* directs a district court, "upon receipt of pro se pleadings challenging an inmate's conviction or incarceration," to issue a notice to the petitioner advising them of the effect of their pleading in light of the Antiterrorism and Effective Death Penalty Act (AEDPA), which bars "second or successive habeas corpus petitions except in very limited circumstances." 197 F.3d 644, 646 (3d Cir. 1999). The notice must advise the petitioner of their options with respect to the filing, including the ability to have the petition adjudicated as filed or to add additional claims. *Id.*

Court then entered an order directing counsel to file any such amended petition on or before October 2, 2019. (ECF No. 85.)

Counsel for Mr. Clancy filed the Motion to Vacate that is the subject of this Order on October 1, 2019. (ECF No. 86.)[2] The counseled Motion asserts a single claim for relief: that Mr. Clancy's "[t]rial counsel was ineffective for failing to follow [Mr.] Clancy's expressed desire to file an appeal in this case and instead declining to file a notice of appeal on Mr. Clancy's behalf, and without so advising Mr. Clancy." (*Id.* at 5.) The Motion asks this Court to vacate Mr. Clancy's current sentence and enter a new judgment "on the same terms and conditions" as the previous judgment so that the clock will restart on his time to appeal and his right to file a later § 2255 petition will be preserved. (*Id.* at 9–10.)[3]

The Government filed its Response to Mr. Clancy's counseled Motion to Vacate on November 15, 2019, and Mr. Clancy filed his Reply on December 9, 2019. (ECF Nos. 89, 93.) This Court set an evidentiary hearing for March 24, 2020, but on March 19, 2020, the hearing was continued indefinitely due to the COVID-19 pandemic. (ECF Nos. 103, 104.) The hearing was eventually rescheduled for July 7, 2021, whereupon the Court heard the testimony of both Mr. Clancy and Mr. Clancy's trial counsel, Mr. Kenneth Haber, and heard argument from both parties. (*See* ECF Nos. 155, 158.) The Court then directed counsel to each file a Memorandum of Law and

---

[2] On October 1, 2020, this Court entered an order directing counsel for Mr. Clancy to file a notice "confirming which pending motions on behalf of her client should be treated as operative by the Court." (ECF No. 105.) Counsel indicated in her reply that the counseled Motion to Vacate, filed October 1, 2019 at ECF No. 86, was the operative petition. (ECF No. 107.) Based on that notice, this Court entered an order dismissing Mr. Clancy's *pro se* amended petition, which he had filed on February 11, 2019 at ECF No. 71 in response to the Court's Miller Notice. (ECF No. 108.) Mr. Clancy's original § 2255 petition, filed on January 3, 2019 at ECF No. 67, was also dismissed. (ECF No. 113.). Therefore, the only motion remaining before the Court is Mr. Clancy's counseled Motion to Vacate (ECF No. 86).

[3] The Court agrees that were it to find relief was warranted in this case, the relief requested by Mr. Clancy would be the appropriate remedy. *See Solis v. United States*, 252 F.3d 289, 294 (3d Cir. 2001) ("A new opportunity to directly appeal is the remedy for petitioner's alleged ineffective assistance of counsel."); *United States v. Allen*, 85 F. App'x 313, 315 (3d Cir. 2004) ("Allen must be re-sentenced so that he can proceed with his appeal.").

Findings of Fact. (ECF Nos. 156, 158.) Mr. Clancy filed his Proposed Findings of Fact and Conclusions of Law on August 17, 2021, and the Government filed its own Proposed Findings of Fact and Conclusions of Law on September 7, 2021. (ECF Nos. 159, 164.) Mr. Clancy filed a Response to Government's Proposed Findings of Fact and Conclusions of Law on September 13, 2021. (ECF No. 165.)

## II.   **FACTUAL FINDINGS**

"[I]n habeas cases the general rule is that the petitioner [] bears the burden of proving that his conviction is illegal," *United States v. Hollis*, 569 F.2d 199, 205 (3d Cir. 1997), and must do so by a preponderance of the evidence. *United States v. Peppers*, 899 F.3d 211, 235 n.21 (3d Cir. 2018); *see also Walker v. Johnson*, 312 U.S. 275 (1941); *United States v. Ayers*, 938 F. Supp. 2d 108, 112 (D.D.C. 2013). "Unless the motion and the files and records . . . conclusively show that a prisoner is entitled to no relief," a court faced with a motion under 28 U.S.C. § 2255 shall "grant a prompt hearing [], determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b); *accord Solis v. United States*, 252 F.3d 289, 295 (3d Cir. 2001). This Court held such an in-person, in-court evidentiary hearing on July 7, 2021, during which the Court heard testimony from both Mr. Clancy and his trial counsel, Mr. Kenneth Haber. (ECF Nos. 155, 158.)[4]

---

[4] Also in the record is a Stipulation indicating that any video recordings from the security camera in the involved courtroom which would have been made during Mr. Clancy's October 2, 2018 sentencing are no longer available. (ECF No. 101.) The parties dispute the significance of the lack of any such recordings, and the conclusions the Court should draw from such absence. (*See, e.g.*, ECF No. 159, at 17–20.) The Court, however, does not find the absence of recordings to be significant or even relevant to its analysis, particularly since there has been no showing in the record that any video recording from the courtroom security camera ever existed. As the Court understands matters from its own experience, there is not as a matter of course a continuous video recording made by the Marshals' security camera of courtroom activities. Moreover, the Stipulation indicates that most recordings are only retained for 30-90 days and it appears that the request to the Marshals office for video recordings did not occur until more than one year after the sentencing. (ECF No. 101.)

Mr. Clancy was the first witness. He testified that before entering his pleas of guilty, he discussed his plea agreement with Mr. Haber, including the appellate waiver, and that at the time he pleaded guilty, Mr. Clancy understood that he "could file an appeal only in very limited circumstances." (ECF No. 158, at 11:6–7.)[5] Mr. Clancy stated that no one had made any promises as to what sentence he would receive, but that he had hoped for a lower sentence than was ultimately imposed by the Court. (*Id.* at 12:1–6.) Mr. Clancy next testified that after the Court re-advised him as to his appellate rights at the end of his sentencing proceeding, he (Mr. Clancy) "made a statement [to Mr. Haber] expressing interest in an appeal." (*Id.* at 12:18–13:1, 21:13–22.) In particular, Mr. Clancy testified that he said, "we're appealing, right." (*Id.* at 22:2.) He testified that he did so "[b]ecause the hearing was over and [he] was interested in an appeal, but did not know how it worked." (*Id.* at 22:3–5.) Mr. Clancy explained that at the time he made the statement "we're appealing, right," Mr. Haber was making written notes about sending Mr. Clancy paperwork and did not respond to Mr. Clancy—either verbally or through his notes. (*Id.* at 22:6–12, 27:25–28:4.) Shortly thereafter, Mr. Clancy was escorted from the courtroom by the Marshals. (*Id.* at 28:5–10.) Mr. Haber did not speak to Mr. Clancy immediately following the proceeding and had no further communication with him about a possible appeal. (*Id.* at 22:13–23:20.)[6]

---

The Stipulation also indicates that review of the sign-in sheet used by attorneys when they visit with clients who are in the Marshals' custody at the Courthouse does not contain any record that Mr. Haber visited with Mr. Clancy either before or after his sentencing, a fact which is consistent with the testimony of Mr. Haber and Mr. Clancy. (*Id.*)

[5] Mr. Clancy further testified at that at his plea hearing, this Court discussed the limitation on his appellate rights with him, and the Court's explanation was consistent with the plea agreement. (*Id.* at 11:19–25.) The Court again reviewed Mr. Clancy's appellate rights and the scope of his waiver with Mr. Clancy during his sentencing. (ECF No. 81, at 12:5–25.) At that time, Mr. Clancy reaffirmed his understanding of the waiver. (*Id.* at 12:25–13:1.)

[6] Some paperwork was eventually sent to Mr. Clancy by Mr. Haber, more than three weeks after the sentencing, but it did not relate to a possible appeal. (*Id.* at 23:21–24:10.)

Mr. Haber testified second. His testimony largely corroborated Mr. Clancy's account of the relevant proceedings, with the notable exception that he did not remember Mr. Clancy making the statement, "we're appealing, right," at the close of sentencing. (*Id.* at 39:21–40:8.) Mr. Haber confirmed that Mr. Clancy's plea agreement was "essentially the standard agreement" used in this District and that it waived Mr. Clancy's appellate rights with limited exceptions. (*Id.* at 38:1–18.) Mr. Haber did not remember the particulars of his arguments at sentencing but thought he had argued for a variance below the guideline range on the drug distribution counts, both in his written sentencing memorandum and orally at the sentencing proceeding. (*Id.* at 38:22–39:11.)[7] Mr. Haber could not recall any discussions about the possibility of an appeal that would have occurred between the time Mr. Clancy entered his guilty plea and when he was sentenced, or in the period following the sentencing proceeding. (*Id.* at 39:12–41:4.) Mr. Haber similarly could not recall any conversation, at any time, during which he told Mr. Clancy that he would *not* appeal. (*Id.* at 41:5–7.)

When asked about the possibility that Mr. Clancy had made the statement, "we're appealing, right," during the sentencing, Mr. Haber testified that he did not recall Mr. Clancy making any such statement, but he affirmed that Mr. Clancy's account of his (Mr. Haber's) notetaking was consistent with his practice during such proceedings. (*Id.* at 39:21–40:3.) Mr. Haber then explained that "if Mr. Clancy did ask [him] to appeal or to discuss an appeal while [Mr. Clancy] was being led out as [Mr. Clancy's testimony] indicated, it's very possible [Mr. Clancy] said it and [Mr. Haber] didn't hear it." (*Id.* at 40:3–5 (emphasis added).)

---

[7] The Court's review of the record confirms Mr. Haber's recollections. (*See* ECF Nos. 59, at 12; 81, at 18:6–24.)

Mr. Haber also testified that he didn't think he had ever filed a notice of appeal where the plea agreement contained an appellate waiver and that it was "certainly possible" that Mr. Clancy had said something about appealing but that it didn't "stick with" him because of the appellate waiver. (*Id.* at 41:20–42:8.) Although he indicated that it was possible that Mr. Clancy had expressed an interest in appealing that didn't "stick with" him, Mr. Haber testified that if he "felt that there was a basis for" an appeal, he "would certainly either pursue it to preserve the time limit and/or . . . immediately discuss it with [his] client." (*Id.* at 41:20–23.) On cross examination, Mr. Haber stated his belief that even if he thought appealing would be a "really bad idea," he would still be obligated to do so if the client insisted. (*Id.* at 43:24–44:5.) And there is nothing in Mr. Haber's testimony that affirmatively indicates that he heard Mr. Clancy say anything at all post-sentencing.

The Court finds both Mr. Clancy and Mr. Haber to be credible. While Mr. Clancy admitted that he did not "remember every detail from every conversation" with Mr. Haber, he explained that he remembered his statement, "we're appealing, right," because it "was one of the last things that was said before [he] got escorted out of the courtroom." (*Id.* at 24:24–25:7.) Contrary to the Government's assertion that Mr. Clancy's ability to specifically recall this moment "defies logic and common sense," (ECF No. 164, at 5), the Court finds this explanation to be at least not inconsistent with common experience. Moreover, there is nothing in Mr. Haber's testimony that contradicts Mr. Clancy's statement. While Mr. Haber had no recollection of hearing such a request by Mr. Clancy, such lack of recollection is not inconsistent with a world in which Mr. Clancy in fact made the request but Mr. Haber literally did not hear Mr. Clancy or one in which Mr. Haber heard Mr. Clancy but the words figuratively did not "stick with" Mr. Haber.

Based on its consideration of the record as a whole and its assessment of the demeanor of the witnesses, the Court now finds as a matter of fact that it is more likely than not that Mr. Clancy said, "we're appealing, right," when he says he said it. However, the Court cannot find on the record now before it that Mr. Haber knew that Mr. Clancy said those words. At best, Mr. Haber's testimony suggests the *possibility* that Mr. Haber literally heard Mr. Clancy say, "we're appealing, right," but it didn't "stick with" Mr. Haber because of the appellate waiver. But Mr. Haber's testimony to that effect appears to the Court to have been entirely speculative, as there is nothing in the record to indicate that Mr. Haber actually heard Mr. Clancy say anything at all at the close of sentencing. And Mr. Haber's testimony equally suggests another, at least as likely possibility—that Mr. Haber simply didn't hear Mr. Clancy.[8] The bottom line is that the record before the Court does not demonstrate that Mr. Haber knew Mr. Clancy raised the topic of an appeal and that Mr. Haber then did nothing to follow up on Mr. Clancy's interest.

## III.   LEGAL STANDARD

*Strickland v. Washington* provides the starting point for any ineffective assistance of counsel claim. 466 U.S. 668 (1984). The defendant must first prove that "counsel's **performance** was deficient"—defined as performance that falls "below an objective standard of reasonableness." *Id.* at 687–88 (emphasis added). The defendant must then "show that the deficient performance **prejudiced** the defense." *Id.* at 687 (emphasis added). The prejudice prong typically requires showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The exact contours of that analysis, however, depend on the type of "proceeding" at issue.

---

[8] The Court notes that one additional scenario is possible but is not indicated on the record before it. That is, it is possible that Mr. Haber heard Mr. Clancy say *something* but did not hear *what* he said. *See infra,* note 20.

In the context of decisions about whether to take an appeal in a criminal case, the failure to appeal results in a forfeiture of the appellate proceeding itself. *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000). And the choice about whether to appeal is one of a limited number of decisions in a criminal case that rests exclusively with the defendant. *McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018). As a result, "prejudice is presumed 'when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken.'" *Garza v. Idaho*, 139 S. Ct. 738, 744 (2019) (quoting *Flores-Ortega*, 528 U.S. at 484). The defendant must therefore show that they would have otherwise appealed but need not show that the appeal would have been successful or even specify the grounds that would have been set forth in a hypothetical appeal to which they no longer have access. *Flores-Ortega*, 528 U.S. at 486; *Garza*, 139 S. Ct. at 738. ("[T]his Court has made clear that when deficient counsel causes the loss of an entire proceeding, it will not bend the presumption-of-prejudice rule simply because a particular defendant seems to have had poor prospects."); *see also Harrington v. Gillis*, 456 F.3d 118, 130–131 (3d Cir. 2006). And importantly, the presumption of prejudice applies even where the defendant has waived many of their appellate rights pursuant to a plea agreement, as Mr. Clancy did here. *Garza*, 139 S. Ct. at 749.

With respect to the performance prong of *Strickland*, *Flores-Ortega* affirmed the longstanding rule "a that lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." 528 U.S. at 477. The Court, however, declined to establish a *per se* rule that counsel must *always* file a notice of appeal unless the defendant specifically instructs them *not to*. *Id.* at 478. Instead, where no specific instruction has been given, *Flores-Ortega* imposes a constitutional duty on counsel to consult with the defendant about whether to appeal (and accordingly, to then follow the defendant's wishes) where

"there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480; *accord Solis v. United States*, 252 F.3d 289, 293 (3d Cir. 2001). In summary, after *Flores-Ortega*, the defendant can satisfy *Strickland* by demonstrating either that they specifically instructed counsel to appeal and counsel disregarded their wishes, or that counsel had a constitutional duty to consult with the defendant about whether to appeal and failed to carry out that duty.[9]

The question of whether counsel had a duty to consult is evaluated under the totality of the circumstances and "take[s] into account all the information counsel knew or should have known." *Flores-Ortega*, 528 U.S. at 480; *Harrington*, 456 F.3d at 129. A "highly relevant factor" in this inquiry is whether the conviction is the result of a guilty plea, "both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Flores-Ortega*, 528 U.S. at 480. Other applicable factors include whether the defendant received the sentence bargained for in the plea agreement, whether the plea agreement waived the defendant's appellate rights, and the extent to which the Court advised the defendant of his or her appellate rights. *Id.* at 479–80. While the *Flores-Ortega* Court refused to adopt a bright-line rule of consultation in all cases, it noted its expectation that in "the vast majority of cases," courts "evaluating the reasonableness of counsel's performance" would find "that counsel had a duty to consult with the defendant about an appeal." *Id.* at 481.

---

[9] In this context, the duty to "consult" carries a "specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *United States v. Shedrick*, 493 F.3d 292, 301 (3d Cir. 2007) (quoting *Flores-Ortega*, 528 U.S. at 478).

## IV.   **THE PARTIES' ARGUMENTS**

The gravamen of Mr. Clancy's Motion to Vacate is that his trial counsel was ineffective because he "failed to file a notice of appeal notwithstanding [Mr.] Clancy's expressed desire to appeal." (ECF No. 86, at 1.) Mr. Clancy argues that he "reasonably demonstrated" his interest in appealing through his statement, "we're appealing, right," and that he received no indication from Mr. Haber that Mr. Haber would not follow his wishes. (*Id.* at 5, ¶ 14.) Mr. Clancy argues in the alternative that even if Mr. Haber did not hear his statement about appealing, Mr. Haber had a duty to consult with Mr. Clancy about an appeal under the circumstances, and given that he did not consult, his performance fell below an objective standard of reasonableness. (ECF No. 159, at 11.)

Mr. Clancy next argues that he was prejudiced by Mr. Haber's actions (or more accurately, lack of action) because Mr. Clancy intended to appeal and would have done so by other means had he not been counting on Mr. Haber to do so on his behalf. (*Id.* at 16–17.) In support, Mr. Clancy points to the fact that he filed his first *pro se* § 2255 petition as soon as he learned that Mr. Haber had not in fact filed a notice of appeal. (*Id.*)

In response, the Government attempts to discredit Mr. Clancy's testimony that he indicated his interest in appealing. The Government first seeks to cast doubt on the likelihood that Mr. Clancy would remember his statement, "we're appealing, right," when he had trouble accurately remembering other portions of his sentencing proceeding. (ECF No. 164, at 4.) To make its point, the Government relies on language from Mr. Clancy's *pro se* § 2255 petitions, wherein Mr. Clancy appears to misremember events from his sentencing and fails to argue that he specifically *instructed* counsel to appeal (and instead notes only that no appeal *was filed*). (*Id.* at 4–5.) On this last point, the Government writes, "[o]bviously, the fact that [Mr. Clancy] never stated that he

requested an appeal in his multiple filings with the court does not favor the defendant." (*Id.* at 4.)[10] The Government further argues that Mr. Clancy is not credible because he fails to remember what the Court concludes are specific, highly technical, legal points made by his attorney in his sentencing memorandum, and because his *pro se* filings "appear[] to have an inaccurate understanding of what the cases he cites stand for." (*Id.* at 4, 6.) Finally, the Government points to Mr. Clancy's criminal history as evidence that he cannot be trusted. (*Id.* at 5–6.)[11]

## V.   **DISCUSSION**

As discussed above, the Court does not agree with the Government's assessment of Mr. Clancy's credibility. Instead, the Court finds that Mr. Clancy did make the statement, "we're appealing, right," at the close of sentencing. Despite such a finding, the Court cannot conclude on the record before it that Mr. Clancy satisfies the performance prong[12] of the *Strickland* inquiry. The Court's reasoning on this point is two-fold.

---

[10] On this point, the Court notes that while Mr. Clancy's initial *pro se* § 2255 petition does not contain specific language alleging that he asked his counsel to appeal, it does allege that "Counsel Failed to file a Notice of Appeal." (ECF No. 67, at 3.) The Court also notes that Ground One of Mr. Clancy's initial petition reads "Ineffective Assistance of Counsel for Failure to File a Requested Notice of Appeal" and cites to *Garza*. (*Id.* at 4.) Mr. Clancy reiterated this same argument in his *pro se* amended § 2255 petition and cited to both *Garza* and a case from the Southern District of Florida, both of which involved situations wherein counsel disregarded a specific instruction from the defendant to appeal. (ECF No. 71, at 1–2 (citing *Bynum v. United States*, No. 17-cv-23142, 2018 WL 9596944 (S.D. Fla. Oct. 26, 2018)).) A more accurate characterization of Mr. Clancy's *pro se* filings is therefore that while he did not allege specific facts describing a request for an appeal, the existence of such a request is directly implied by his legal arguments. And the Court notes that it has an obligation to "liberally construe[]" Mr. Clancy's *pro se* filings." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[11] The Government appears to focus on Mr. Clancy's credibility because it concedes that if the Court finds Mr. Clancy made a specific instruction to Mr. Haber to file a notice of appeal, Mr. Haber would have had an obligation to do so. (ECF No. 89, at 5 ("Under *Garza v. Idaho*, if [Mr. Clancy] recalls correctly **and** is truthful, his direct appeal rights will likely be reinstated, as prejudice is presumed when an attorney does not file for a requested appeal (even if there is a valid appeals waiver).").) As discussed below, because the Court concludes that Mr. Clancy has not carried his burden to show that Mr. Haber knew of his request and then disregarded it, Mr. Haber could not fail to act on an instruction of which he was not aware, and his performance was therefore not constitutionally deficient for that reason.

[12] Because the Court concludes that Mr. Clancy does not satisfy the performance prong of *Strickland*, there is no need to discuss the prejudice inquiry in great detail. However, the Court does conclude that *had* Mr. Clancy satisfied the performance prong (for example, had the Court found that Mr. Haber did hear him), Mr. Clancy would also satisfy the prejudice prong. In order to do so, Mr. Clancy would need to demonstrate "a reasonable probability that, but for

First, while the Court finds that Mr. Clancy did orally express an interest in appealing, the Court also finds that Mr. Clancy has not demonstrated by a preponderance of the evidence that Mr. Haber knew that he did so. As explained below, given the focus of the *Strickland* inquiry on the objectively reasonable performance of counsel based on what they knew or should have known, the Court concludes that unless Mr. Haber's very failure to know of Mr. Clancy's request was itself objectively unreasonable, his failure to act on a request that he did not hear cannot be considered constitutionally deficient performance. And while the Court can envision scenarios in which counsel's failure to hear a request by the defendant would be itself objectively unreasonable, the Court cannot conclude on the record before it that such is the case here.

Second, the Court concludes that Mr. Haber did not otherwise have a constitutionally imposed duty to consult with Mr. Clancy about appealing. The record does not indicate that a rational defendant would likely have wanted to appeal in the circumstances of this case such that it should be presumed that counsel in Mr. Haber's shoes would have been obligated to inquire of Mr. Clancy as to the issue of an appeal.

---

counsel's error(s)" he would have pursued an appeal. *Velazquez v. Superintendent Fayette SCI*, 937 F.3d 151, 163 (3d Cir. 2019). As discussed above, and notwithstanding the Government's arguments to the contrary, the Court finds Mr. Clancy's testimony that he said, "we're appealing, right," to be credible. This statement indicates an interest in appealing that began at least as soon as Mr. Clancy received his sentence. And Mr. Clancy's rapid filing of a *pro se* § 2255 petition shortly after learning that his counsel did not in fact file a notice of appeal underscores his continued interest in appealing. Under *Garza*, the bare fact that Mr. Clancy had an appellate waiver in his plea agreement is of no consequence to the prejudice inquiry. 139 S. Ct. at 747. Mr. Clancy also has no obligation at this stage to set forth the grounds he would raise in an appeal or to demonstrate that his appeal has merit. *Flores-Ortega*, 528 U.S. at 484; *Harrington*, 456 F.3d at 130–31. It is enough that he has been deprived of a proceeding of which he would have taken advantage if not for his trial counsel's prior course of conduct. Mr. Clancy has sufficiently demonstrated a causal relationship between the actions (or inactions) of Mr. Haber and his own failure to file a timely notice of appeal. Had the Court determined that Mr. Haber's performance was deficient, Mr. Clancy's Motion would therefore have been successful.

**A.**     **Mr. Clancy reasonably demonstrated his interest in appealing, but he has not shown that Mr. Haber knew of his interest and then failed to act on it.**

The analysis set out in *Flores-Ortega* begins with the longstanding rule "that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." 528 U.S. at 477 (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)). Alternatively, even if the defendant does not provide specific instructions to file a notice of appeal, counsel has a duty to consult where the defendant "reasonably demonstrate[s] to counsel that he [is] interested in appealing." *Id.* at 480. The first question is therefore whether Mr. Clancy did either of those two things.

As a preliminary matter, the Court concludes that Mr. Clancy's statement, "we're appealing, right," at the close of his sentencing does not constitute a specific instruction to file a notice of appeal. The natural implication of *Flores-Ortega* is that there is a legally significant difference between *specifically instructing* counsel to file a notice of appeal, which triggers a duty on the part of counsel to in fact file such a notice, *and reasonably demonstrating* to counsel an interest in appealing, which initially triggers only a duty to consult.[13] At least one panel of the Third Circuit has explicitly recognized this distinction. *See United States v. Jeffries*, 73 F. A'ppx 535, 536 (3d Cir. 2003) ("The District Court's statement that [the defendant] 'talked about appealing the sentence' is thus best read to mean that [the defendant and his counsel] discussed (at least briefly) the possibility of appealing . . . but that [the defendant] never gave [counsel] a specific instruction.") And district courts in this Circuit have applied similar reasoning to distinguish the

---

[13] Of course, if consultation leads to a specific instruction to file a notice of appeal, counsel must then follow through on the defendant's wishes. *Flores-Ortega*, 528 U.S. at 478 (counsel acts in a professionally unreasonable manner "by failing to follow the defendant's express instructions with respect to an appeal.")

two situations. For example, in *United States v. Purcell*, the court concluded that "although the defendant expressed an interest in filing an appeal shortly after the jury verdict" when he told counsel that "he 'wanted to file an appeal, after talking with [his] family,'" this statement did not "communicate a definitive intent to appeal" or constitute a specific instruction to file a notice of appeal. 667 F. Supp. 2d 498, 515 (E.D. Pa. 2009), *as amended* (Oct. 30, 2009), *aff'd*, 517 F. App'x 79 (3d Cir. 2013); *see also Gordon v. United States*, No. 14-cr-6760, 2020 WL 468334, at *4 (D.N.J. Jan. 28, 2020) (applying a similar distinction).

While the Court finds Mr. Clancy's testimony that he said, "we're appealing, right," to be credible, the Court concludes that this statement is similar to those discussed in *Jeffries* and *Purcell,* in that while it reasonably demonstrates an interest in appealing, it does not constitute a specific instruction to file a notice of appeal. In so concluding, the Court finds significant the inclusion of "right" at the end of the statement. In the Court's view, the inclusion of "right" transforms the language from a statement that looks more like an instruction ("we're appealing"— full stop) into something that looks more like a question or expresses a desire to discuss whether an appeal is warranted.[14] In other words, it transforms it from a statement which would implicate a duty on the part of Mr. Haber to file a notice of appeal into one which would implicate a duty to consult.

And the Court does conclude that had Mr. Haber heard Mr. Clancy and therefore known that Mr. Clancy said, "we're appealing, right," that would have been sufficient to "reasonably demonstrate[] . . . that [Mr. Clancy] was interested in appealing," and accordingly to invoke a duty

---

[14] There is also nothing in the record to indicate that Mr. Clancy had earlier given such a specific instruction, nor is there anything to indicate that he later gave one; rather, the testimony of Mr. Clancy and Mr. Haber during the evidentiary hearing indicates that they never again conversed with one another about the possibility of appealing, nor had they ever done so prior to sentencing.

to consult. As just discussed, while not a specific instruction, Mr. Clancy's statement was similar to that which was held sufficient to invoke the duty to consult in *Purcell*. *See* 667 F. Supp. 2d at 515. And in *United States v. Shedrick*, the Third Circuit held that the defendant had "reasonably demonstrated" his interest in appealing when he "vehemently contested the factual issues that led to his upward departure through the District Court proceedings." 493 F.3d 292 (3d Cir. 2007). This Court concludes that if such an implied demonstration of interest is sufficient to invoke the duty to consult, what Mr. Clancy said here was also sufficient to do so.[15] So, if Mr. Haber knew Mr. Clancy said, "we're appealing, right," then he had just such an obligation to consult, one that the record demonstrates he did not fulfill.[16]

---

[15] The Court also notes that the language used by Mr. Clancy is at least as indicative as language that has been found sufficient by other courts of appeals to implicate the duty to consult. *See, e.g.*, *Rojas-Medina v. United States*, 924 F.3d 9, 17 (1st Cir. 2019) (defendant asked, "why he had gotten 'so much time,'" and discussed the possibility of filing a motion for reconsideration with counsel); *United States v. Cong Van Pham*, 722 F.3d 320, 325 (5th Cir. 2013) (defendant who hoped to get probation was sentenced to 60 months imprisonment, was visibly upset, and "brought up that he . . . wanted to do something to get less time"); *Frazer v. South Carolina*, 430 F.3d 696, 701–02 (4th Cir. 2005) (defendant who assumed his sentences would run concurrently was sentenced to consecutive terms and asked his attorney to "see 'about having time run together'"); *Palacios v. United States*, 453 F. A'ppx 887, 889 (11th Cir. 2011) (after sentencing, defendant turned to his attorney and asked "what's next? What can we do now?").

[16] The possibility that Mr. Haber actually heard Mr. Clancy utter the words, "we're appealing, right," but the statement didn't "stick with" him because of the appellate waiver is not to the contrary, because in that case Mr. Haber would have been ineffective in allowing Mr. Clancy's interest to slip from his mind. In *Flores-Ortega*, the Supreme Court indicated its expectation that "courts evaluating the reasonableness of counsel's performance . . . will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal." 528 U.S. at 481. That duty is implicated where "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480.

*Garza* makes clear that the existence of an appellate waiver does not obviate the need to consult where it is otherwise implicated. 139 S. Ct. 738 (2019); *see also United States v. Lawbaugh*, No. 16-cr-049, 2020 WL 954017, at *7 (M.D. Pa. Feb. 27, 2020) (duty to consult despite appellate waiver where defendant reasonably demonstrated interest in appealing); *Rojas-Medina v. United States*, 924 F.3d 9, 16–17 (1st Cir. 2019) (*Garza* applies where defendant "reasonably demonstrates" interest in appealing). Had Mr. Haber consulted with Mr. Clancy, Mr. Haber would have been able to explain to Mr. Clancy that the appellate waiver barred many potential claims of appeal (including many claims about the length of Mr. Clancy's sentence) and may well have ultimately convinced Mr. Clancy that it was not in his interest to appeal. But the existence of the appellate waiver would not excuse Mr. Haber's very failure to consult where such a duty to consult is implicated, as would have been true had Mr. Haber heard Mr. Clancy say, "we're appealing, right."

Thus, if Mr. Haber did *hear* Mr. Clancy reasonably demonstrate an interest in appealing—and the Court concludes that Mr. Clancy's statement, "we're appealing, right," was such a reasonable demonstration—then the duty

Thus, if the Court found that Mr. Haber did hear Mr. Clancy—which it does not—then the Court's analysis would be complete, and Mr. Clancy would prevail in his Motion to Vacate.[17] But on the record before it, the Court cannot conclude that Mr. Clancy has carried his burden to demonstrate by a preponderance of the evidence that Mr. Haber did hear him and therefore that Mr. Haber knew of Mr. Clancy's interest in appealing. Here's why.

Mr. Haber testified that he had no recollection of Mr. Clancy saying, "we're appealing, right," or anything else, at the close of sentencing. Mr. Clancy's testimony is not to the contrary— he testified during the evidentiary hearing that Mr. Haber continued to take notes and did not respond to his inquiry. (ECF No. 158, at 22:6–8 ("He was writing things down. I don't remember getting a direct response from him verbally."); *id.* at 28:3–4 ("[H]e never wrote nothing down about appealing or not appealing.").) In Mr. Haber's testimony, he offers two possible explanations for his conduct: (1) that he literally didn't hear Mr. Clancy or (2) that he literally heard Mr. Clancy but that it didn't "stick with" him because of Mr. Clancy's appellate waiver. (*Id.* at 39:21–40:5; 42:6–8.).

However, Mr. Haber's own testimony does not demonstrate that he actually heard anything at all, and the balance of the evidence advanced by Mr. Clancy does not generate an inference from circumstantial evidence that Mr. Haber heard Mr. Clancy say anything. To the contrary, Mr. Clancy's testimony was that Mr. Haber never looked up from his notes or otherwise reacted to Mr. Clancy's utterance, and the most Mr. Haber's testimony generates is the *possibility* that Mr. Clancy

---

to consult would have been triggered at that time, and it would have been Mr. Haber's professional obligation to fulfill that duty. But as noted above, the Court concludes that Mr. Clancy has not demonstrated that Mr. Haber heard him say anything at all, or otherwise knew that Mr. Clancy wanted to appeal.

[17] *See supra*, note 12.

said something that did not "stick with" Mr. Haber. Mere possibility, however, is not sufficient to carry Mr. Clancy's burden. Rather, this part of the analysis turns on whether Mr. Haber failed to act on an instruction to appeal or an expression of interest in discussing an appeal.

The Eighth Circuit considered a comparable question in *Parsons v. United States*, which involved substantially similar facts to those in this case. 505 F.3d 797 (8th Cir. 2007). There, the defendant testified that "when the court pronounced his sentence, [he] told his attorney, 'We've got to appeal this.'" *Id.* at 798. Mr. Parsons' counsel testified "that it is his practice to file an appeal when requested or instructed to do so, but he did not hear Parsons request an appeal." *Id.* at 799. As in this case, the district court found both Mr. Parsons and his attorney to be credible. Under those circumstances, the district court further concluded that counsel could not be considered to have failed to act on a specific instruction to appeal that he did not hear, and the Eighth Circuit affirmed. *Id.* ("The district court expressly found that counsel did not hear Parsons' request. Therefore, Parsons' attorney did not *disregard* his client's request or instruction to appeal."). The Eight Circuit further clarified that "[c]ounsel cannot act on an instruction that is not received, either orally or in writing." *Id.*[18]

While *Parsons* dealt with the question of whether counsel is ineffective when they fail to hear a "specific instruction[]" from the defendant to file a notice of appeal, the Court now concludes that the same principle applies here where the question is whether counsel is ineffective when they fail to hear the defendant "reasonably demonstrate[]" his interest in appealing.[19]

---

[18] The Eighth Circuit noted that "depending on the circumstances, counsel's claim that he did not hear an oral request or did not receive a written request, may not be credible," but found that was not applicable in Mr. Parsons' case as the district expressly found counsel to be credible. *Id.* at 799. Because this Court finds Mr. Haber to be credible, that concern is similarly inapplicable in this case.

[19] Other district courts have impliedly reached the same conclusion. *See United States v. Whitehurst*, No. 11-cr-37, 2013 WL 4017329, at *8 (N.D. Fla. Aug. 7, 2013) (focusing on the "rational defendant" prong of the duty to consult inquiry after citing *Parsons* in reaching the conclusion that there was no record evidence (short of a statement made

Because Mr. Clancy has not demonstrated by a preponderance of evidence that Mr. Haber knew of his interest in appealing and accordingly failed to fulfill his concomitant duty to consult, he cannot prevail at this stage of the analysis. As such, the Court must next consider whether Mr. Haber's very failure to hear Mr. Clancy's statement was itself constitutionally deficient performance.

**B.** **Mr. Clancy has not shown that Mr. Haber's failure to hear his request was itself professionally unreasonable.**

The Court concludes that if Mr. Haber did not hear Mr. Clancy say, "we're appealing, right," Mr. Haber did not render ineffective assistance of counsel in failing to file a notice of appeal unless the reason he did not hear Mr. Clancy's statement was objectively unreasonable. In other words, the Court concludes that Mr. Haber could not have been derelict in his duty to consult if he was reasonably unaware of the facts that implicated that duty.

*Flores-Ortega* makes clear than when determining whether there is a duty to consult, the Court should consider "all the information counsel knew or should have known" at the time. 528 U.S. at 480. As discussed in the previous section, if Mr. Haber literally did not hear Mr. Clancy say, "we're appealing, right," then that statement certainly cannot be characterized as "information counsel *knew*." And in this case, the Court credits Mr. Haber's testimony that he was engaged in his usual process of notetaking about the paperwork he needed to send to Mr. Clancy (and

---

by the defendant that counsel did not hear) "that Defendant 'reasonably demonstrated to counsel that he was interested in appealing'"); *Brown v. United States*, No. 12-cr-73, 2016 WL 1296188, at *6 (W.D. Va. Mar. 30, 2016) (citing *Parsons* and concluding that Defendant "did not clearly express to counsel an interest in appealing" where he testified that he "mentioned to counsel that he wanted to appeal, but may have done it while counsel was speaking or otherwise so softly that counsel did not hear him"). The *Parsons* Court did not have occasion to explicitly consider whether its ruling with respect to the "specific instruction" analysis applied to the "reasonably demonstrated" analysis because the defendant did "not appeal the district court's conclusion that counsel's failure to consult was not ineffective assistance." *Parsons*, 505 F.3d at 800.

according to Mr. Clancy's testimony, Mr. Haber may actually have been taking such notes for Mr. Clancy's benefit in understanding what would happen next). (*See* ECF No. 158, at 27:6–19.) Mr. Clancy has not pointed to any facts in the record or applicable law to suggest that such behavior by Mr. Haber was objectively unreasonable, and the Court is not aware of any such facts or law. Said differently, the Court concludes that the fact that Mr. Haber was taking notes at this point in the proceeding was not a *per se* unreasonable course of action by defense counsel, and Mr. Clancy has not demonstrated that there is any particular reason which would render it unreasonable in his case. Accordingly, the Court concludes that Mr. Clancy has not carried his burden to demonstrate that the statement, "we're appealing, right," constitutes information that Mr. Haber *"should have known"* under these circumstances.[20]

In sum, based principally on the Court's assessment of Mr. Clancy's in-court testimony during the evidentiary hearing conducted here, the Court credits Mr. Clancy's testimony that at the close of sentencing he stated aloud, "we're appealing, right." However, the Court also credits Mr. Haber's testimony that he has no recollection of such a request and notes that there was no indication in Mr. Haber's testimony that he heard Mr. Clancy say anything at all. The Court concludes that Mr. Clancy has not carried his burden to prove that Mr. Haber actually did hear him and therefore knew of his interest in appealing (and that the reason Mr. Haber now has no recollection is that it didn't "stick with" him because of the appellate waiver). As a result, the Court

---

[20] The Court is not prepared to rule now that there is no set of facts under which the reason counsel fails to hear a similar request by the defendant may be itself objectively unreasonable. But given that the Court concludes that the reason here was not unreasonable, the Court does not need to address the Eighth Circuit's statement in *Parsons* that "the reason why counsel did not hear the request is irrelevant." 505 F.3d at 799 n.2.

The Court also does not need to address a third possibility for why Mr. Clancy's statement, "we're appealing, right," did not register with Mr. Haber: that Mr. Haber literally heard Mr. Clancy say *something* but did not hear *what* Mr. Clancy said. There is nothing in the record to indicate that such actually occurred—e.g., no testimony from Mr. Haber that he thought he heard Mr. Clancy say something but was writing things down and therefore didn't catch what it was.

concludes that Mr. Haber didn't hear Mr. Clancy or otherwise know of an interest on Mr. Clancy's

part in an appeal. And as the Court further concludes that Mr. Clancy has not demonstrated that

Mr. Haber failed to know of his statement for some reason that was itself objectively unreasonable,

the Court concludes that it cannot hold Mr. Haber to a duty to consult that he was not—and, under

the circumstances evident in the record, should not have been—aware of.

### C.  There was no reason for defense counsel to believe that a rational defendant in Mr. Clancy's position would want to appeal.

In *Flores-Ortega*, the Supreme Court indicated its expectation that "courts evaluating the

reasonableness of counsel's performance . . . will find, in the vast majority of cases, that counsel

had a duty to consult with the defendant about an appeal." 528 U.S. at 481. At the same time, the

Court declined to adopt a *per se* requirement that defense counsel must consult with their client

about an appeal in every case. *Id.* at 478. The Court also provided a stylized example of a scenario

under which there *would not* be a constitutional duty to consult about an appeal:

> For example, suppose that a defendant consults with counsel [before pleading guilty]; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal.

*Id.* at 479. In contrast, the Court held that there *would* be a duty to consult "when there is reason

to think either (1) that a rational defendant would want to appeal (for example, because there are

nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to

counsel that he was interested in appealing." *Id.* at 480.

This Court addressed the second prong in the previous section and concluded that while

Mr. Clancy did "reasonably demonstrate[]" an interest in appealing, he has not carried his burden

to show that Mr. Haber in fact heard and knew of his interest and failed to consult, or alternatively, that Mr. Haber's very failure to know of his interest was itself objectively unreasonable. The Court now concludes that there was also not reason for Mr. Haber to believe that a rational defendant in Mr. Clancy's position would have wanted to appeal given "all the information [Mr. Haber] knew or should have known" such that Mr. Haber had an affirmative obligation to consult with Mr. Clancy about an appeal regardless of whether Mr. Clancy instructed Mr. Haber to do so or otherwise expressed an interest in appealing.

The Court begins with what the *Flores-Ortega* Court called "a highly relevant" but "not determinative" factor—the fact that Mr. Clancy's conviction followed a guilty plea. *Id.* at 480.

Mr. Clancy agreed to plead guilty to one count of possession with intent to distribute a quantity of heroin and fentanyl, one count of possession with intent to distribute a quantity of heroin, and one count of possession of a firearm in furtherance of a drug trafficking crime. (ECF Nos. 10; 39-1, at 1.) The plea agreement did not contain an agreed-upon sentence, [21] but the United States did agree to recommend a two-level downward adjustment for acceptance of responsibility and to move for one additional level of downward adjustment pursuant to U.S.S.G § 3E1.1(b). (ECF No. 31-1, at 3.) Those provisions were incorporated into the calculation of the Sentencing Guidelines in this case. (ECF No. 50, at 7.)

The United States also agreed to move to dismiss the remaining counts pending against Mr. Clancy after the imposition of his sentence on the three counts to which he pleaded guilty. (*Id.* at 3.) Those remaining counts were two counts of possession of a firearm by a convicted felon in

---

[21] The agreement instead provided that Mr. Clancy would be sentenced in accordance with the Sentencing Reform Act, considering the Sentencing Guidelines and the facts initially determined by the Probation Office and ultimately found by the Court by a preponderance of evidence. (*Id.* at 1.)

violation of 18 U.S.C. 922(g)(1), offenses which would have significantly increased Mr. Clancy's sentencing exposure. (ECF No. 10; ECF No. 89, at 8–9.). Those counts were in fact dismissed at the time of sentencing. (*See* ECF No. 64, at 1.)

Mr. Clancy's plea agreement contained a broad appellate waiver. Specifically, Mr. Clancy waived "the right to take a direct appeal from conviction or sentence" subject to limited enumerated exceptions:

a. If the United States appeals from the sentence, Eric Clancy may take a direct appeal from the sentence.

b. If (1) the sentence exceeds the applicable statutory limits set forth in the United States Code, or (2) the sentence unreasonably exceeds the guideline range determined by the Court under the Sentencing Guidelines, Eric Clancy may take a direct appeal from the sentence.

(ECF No. 39-1, at 2.) The agreement further provided that "[n]othing in the foregoing waiver of appellate rights shall preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum, if otherwise permitted by law." (*Id.*) At the change of plea hearing and again at sentencing (before the allocution of the parties and the imposition of sentence), the Court personally reviewed these conditions with Mr. Clancy, who indicated he understood the waiver. (*See* ECF Nos. 158, at 11:5–11:25; 81, at 11:5–12:1.)

Importantly, the Supreme Court's decision in *Garza v. Idaho* confirms that there may be a duty to consult even where a guilty plea contains a waiver of many of the defendant's appellate rights, as did Mr. Clancy's. As the *Garza* Court explained, "no appeal waiver serves as an absolute bar to all appellate claims." 139 S. Ct. 738, 744. Mr. Clancy's waiver, for example, provides that he can appeal from his sentence if the Government does so, if his sentence is excessive in relation to applicable statutory limits, or if his sentence unreasonably exceeds the Guidelines. *Garza* also

points to the possibility that the prosecution may forfeit or waive the waiver,[22] and explains that the defendant may challenge whether the waiver itself was knowing or voluntary. *Id.* at 744–45. As a result, "a defendant who has signed an appeal waiver does not, in directing counsel to file a notice of appeal, necessarily undertake a quixotic or frivolous quest." *Id.* at 745.

The scope of the appellate waiver, however, does provide critical insight into the question of whether "there is reason to think . . . that a rational defendant would want to appeal." At this point, a distinction is in order. Whereas *Garza* was primarily concerned with the prejudice prong of the *Strickland* inquiry,[23] this Court is now engaged in an analysis of the performance prong—in particular, the question of whether "there is reason to think . . . that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)." *Flores-Ortega*, 528 U.S. at 480. This distinction between Mr. Garza's case and Mr. Clancy's has two significant implications. First, because only prejudice was contested in his case, Mr. Garza had no need to demonstrate that there were nonfrivolous grounds for an appeal. *Garza*, 139 S. Ct. at 750 ("Accordingly where, as here, an attorney performed deficiently in failing to file a notice of appeal

---

[22] The Court notes that the Government does not appear to be inclined to do so in this case. (*See* ECF No. 89, at 9 ("Pursuing such an appeal would appear to be a clear violation of the terms of his written plea agreement with the government. Those actions would permit the government to then consider pursuing the offenses that were dismissed by the government in good faith, based upon the agreement that the defendant subsequently violated.").)

[23] *Garza* involved a defendant who specifically instructed his counsel to appeal—his counsel openly acknowledged that Mr. Garza asked counsel to file a notice of appeal, but counsel did not do so because of Mr. Garza's appellate waiver. *Id.* at 743. The *Garza* Court cited *Flores-Ortega* for the proposition that "Garza's attorney rendered deficient performance by not filing the notice of appeal in light of Garza's clear requests." *Id.* at 746. Because a specific instruction was involved, the *Garza* Court did not have to consider whether a rational defendant in Mr. Garza's position would have wanted to appeal. The Court instead took it as established that Mr. Garza did want to, and in fact would have, appealed, and focused on whether the presumption of prejudice applied despite his appellate waiver. *Id.* at 744.

despite the defendant's express instruction, prejudice is presumed 'with no further showing from

the defendant of the merits of his underlying claims.'" (quoting *Flores-Ortega*, 528 U.S. at 484)).[24]

Second, where, as in *Garza*, it is assumed that the defendant would have appealed and the

only question is whether he was prejudiced by counsel's failure to do so, it makes sense to consider

---

[24] The *Flores-Ortega* opinion indicates that the question of nonfrivolous grounds for an appeal can enter the *Strickland* analysis in a number of complex and interlocking ways.

First, with respect to the **performance** prong, the test endorsed in *Flores-Ortega* facially asks whether "a rational defendant would want to appeal (for example, *because there are nonfrivolous grounds for appeal*)." *Flores-Ortega*, 528 U.S. at 480 (emphasis added).

Later in the opinion, the Court indicates that there is significant analytical overlap between the performance and prejudice prongs of the analysis. *Id.* at 485 ("We recognize that the prejudice inquiry we have described is not wholly dissimilar from the inquiry used to determine whether counsel performed deficiently in the first place."). The Court then explains that "evidence that there were nonfrivolous grounds for appeal . . . will often be highly relevant in making [the] determination" that there was **prejudice**—i.e., that a defendant would have appealed but for counsel's ineffective assistance. *Id.*

However, the Court went on to explain that "although showing nonfrivolous grounds for appeal may give weight to the contention that the defendant would have appealed, a defendant's inability to 'specify the points he would raise were his right to appeal reinstated,' will not foreclose the possibility that he can satisfy the **prejudice** requirement where there are other substantial reasons to believe that he would have appealed." *Id.* at 486 (quoting *Rodriquez v. United States*, 395 U.S. 327, 330 (1969)) (citation omitted). In Garza's case, his specific and repeated instructions to counsel appear to have supplied those "other substantial reasons" such that inquiry into the merits of possible claims of appeal was not necessary to demonstrate prejudice. As discussed above at note 12, in Mr. Clancy's case, this Court determined that Mr. Clancy would satisfy the prejudice prong based on his immediate interest in appealing and his quick and diligent filing of a § 2255 petition following his realization that Mr. Haber had not in fact filed a notice of appeal on his behalf.

While the language of *Flores-Ortega* seemingly also does not foreclose the possibility that a defendant could demonstrate that a rational defendant in his position would want to appeal without showing nonfrivolous grounds for appeal (and thus satisfy the **performance** prong), it does strike this Court as much more difficult to do so without such a showing. The Supreme Court's reasoning that a defendant need not demonstrate that they have meritorious grounds for appeal in order to show **prejudice** emphasized that it is "unfair to *require* an indigent, perhaps *pro se*, defendant to demonstrate that his hypothetical appeal might have had merit before any advocate has ever reviewed the record in his case in search of potentially meritorious grounds for appeal." *Id.* at 486. In the case of the **performance** inquiry, however, the question is whether counsel acted in a matter that was objectively unreasonable in failing to consult with the defendant about whether or not to appeal. Counsel acts unreasonably when they fail to consult with the defendant where there is reason to think that a rational defendant would want to appeal under the circumstances. The Court concludes that both language and logic point to the importance of nonfrivolous grounds for an appeal in making that inquiry. The performance test set down in *Flores-Ortega* explicitly references whether there are nonfrivolous grounds for appeal, and trial counsel, being well versed in the facts and law of the defendant's case, would be well positioned to at least assess whether a rational individual in the defendant's shoes would want to appeal under the circumstances.

If on the other hand, the defendant "reasonably demonstrates" a subjective interest in appealing, and counsel knows or should know of that interest, then it would seem that under *Flores-Ortega*, counsel has a duty to consult regardless of the merits of possible claims of appeal. *See* 528 U.S. at 480.

all the possible avenues by which a defendant might have successfully appealed despite his appellate waiver. This would naturally include claims of appeal not covered by the appellate waiver, claims that are inherently not waivable, and the possibility that the prosecution might forfeit or waive the waiver. In cases like Mr. Clancy's however, where the operative question is whether "there is reason to think . . . that a rational defendant would want to appeal," *Flores-Ortega* specifically directs that the Court consider only what counsel "knew or should have known" at the time the duty to consult would have been implicated. 528 U.S. at 480. As such, while Mr. Clancy's appellate waiver certainly does not preclude him from demonstrating that Mr. Haber had a duty to consult, the specifics of that waiver, and the information Mr. Haber knew (or should have known) at the time about the likely success of any claims brought under it, are critically important to the Court's analysis of any potential duty to consult in this case.

Those circumstances are as follows. During the period immediately following the imposition of Mr. Clancy's sentence, when a notice of appeal would have been filed and when Mr. Haber correspondingly might have had a duty to consult, Mr. Haber had the following information: (1) the Government had not appealed Mr. Clancy's sentence, nor was there any indication that the Government planned to do so, or to forfeit or waive Mr. Clancy's appellate waiver; (2) there was no indication that Mr. Clancy planned to challenge whether his waiver was knowing or voluntary; (3) Mr. Clancy had received a sentence of 30 months imprisonment at each of Counts 1s and 3s (the possession with intent to distribute offenses), to be served concurrently, and 60 months at Count 5s (the possession of a firearm in furtherance offense), to be served consecutive to the sentence at Counts 1s and 3s (with periods of supervised release to follow). (*See* ECF No. 64.)

Further, Mr. Clancy's sentence was within the applicable statutory limits and was at the low end of the guideline range calculated by the Probation Office pursuant to the Sentencing

Guidelines (and adopted by the Court). (*See* ECF Nos. 50, 60.) It was also within the applicable penalty ranges stipulated to in the plea agreement. (*See* ECF No. 39-1.) And the Government had fulfilled its commitments to support the inclusion in the Guidelines calculation of the full three-level downward adjustment to the Guidelines for Mr. Clancy's acceptance of responsibility via his guilty plea and as authorized by U.S.S.G. §3E1.1(a), (b), and to dismiss all of the remaining charges against Mr. Clancy.

In addition, Mr. Clancy did not object to the Guidelines calculation outlined in the Presentence Investigation Report. (ECF Nos. 52; 81, at 6:21–25.) He did, however, seek a downward variance from the Guidelines as to the sentence for Counts 1s and 3s. (ECF Nos. 59, at 12; 81, at 18:6–24.) Given that the firearms offense at Count 5s carried a mandatory, consecutive minimum of 60 months imprisonment, Mr. Clancy argued that "[a]ny consecutive sentence [for Counts 1s and 3s], even one (1), six (6), or twelve (12) months, would be lawful, fair and just, and fulfill" all the purposes of sentencing as specified in 18 U.S.C. § 3553. (ECF No. 59, at 12.) During the sentencing proceeding itself, Mr. Haber argued on Mr. Clancy's behalf that the Court could impose a sentence of as little as one day at Courts 1s and 3s; while Mr. Haber did not argue that the Court *should* impose a one-day sentence in Mr. Clancy's case, Mr. Haber did ask the Court to "consider something significantly below the guidelines." (ECF No. 81, at 18:6–24.) The Court acknowledged Mr. Haber's argument for a variance but ultimately determined in applying the sentencing factors set out in 18 U.S.C. §3553(a) that such a variance was not appropriate after balancing the challenges Mr. Clancy had faced in his life against the seriousness of the charged conduct and Mr. Clancy's criminal history, particularly his repeated convictions involving firearms. (*Id.* at 35:19–36:8.)

Mr. Clancy now argues that he "hoped he would receive a sentence below the guideline range," and was "dissatisf[ied] with the sentence imposed." (ECF No. 159, at 4–5.) As a result, Mr. Clancy argues that he was interested in appealing and that was why he made the statement, "we're appealing, right." (*Id.* at 5.) As discussed in detail above, had Mr. Haber heard Mr. Clancy, the situation and disposition of this Motion would be quite straightforward. However, given that the Court finds that Mr. Clancy has not demonstrated by a preponderance of evidence that Mr. Haber did hear him or otherwise knew that Mr. Clancy was subjectively interested in appealing,[25] the Court must consider whether Mr. Haber reasonably should have had reason to believe that a rational defendant in Mr. Clancy's shoes would have objectively wanted to appeal. The Court concludes that on this record, Mr. Haber did not.

First, there is nothing in the record to indicate that Mr. Clancy said anything to Mr. Haber prior to sentencing to indicate that if he received a Guidelines sentence, or if the sentence was otherwise contrary to his hopes, he wanted to appeal. Next, Mr. Haber, who had discussed Mr. Clancy's appellate waiver with Mr. Clancy before he entered his plea, and who had just heard the Court review that waiver (again) during the sentencing, would have recognized that the sentence imposed by the Court (while higher than hoped for) was within both the statutory maximum sentence and the applicable sentencing Guidelines and did not otherwise implicate any of the exceptions in the appellate waiver. He would have further understood the benefit Mr. Clancy received from his plea agreement, particularly as to the dismissed firearms charges at Counts 2s and 4s (charges which carried a possible term of imprisonment of 10 years). (ECF No. 11, at 4.) He would have known that the Government had fulfilled its obligations under the plea agreement,

---

[25] Such as from a pre-sentencing conversation in which Mr. Clancy had actually set out to Mr. Haber situations in which he wanted to appeal.

and he would have understood the risks of violating that agreement through an appeal that fell outside of the scope of the appellate waiver.[26] The Court concludes that under those circumstances and at that time, a reasonable lawyer in Mr. Haber's shoes did not have reason to conclude that a rational defendant in Mr. Clancy's position would have wanted to appeal. As such, a duty to affirmatively consult with Mr. Clancy on that topic was not triggered.[27]

## VI.   **CONCLUSION**

*Strickland v. Washington* provides the starting point for any ineffective assistance of counsel claim, and grounds the performance inquiry in an "objective standard of reasonableness" 466 U.S. 668, 687–88 (1984). That inquiry emphasizes what counsel knew or should have known at the time of their allegedly deficient performance. In this case, the Court concludes that while Mr. Clancy reasonably demonstrated his interest in appealing, he has not carried his burden to show that Mr. Haber knew of his interest. The Court further concludes that Mr. Clancy has not demonstrated that the reasons Mr. Haber failed to know of his interest were themselves objectively unreasonable. And finally, the Court concludes that the duty to consult was not otherwise implicated because Mr. Haber did not have objective reasons to believe that a rational defendant

---

[26] For a discussion of how the bargained-for sentence enters the performance inquiry, see *United States v. Martinez*, 120 F. Supp. 2d 509, 515–16 (finding that a rational defendant would not want to appeal after he received the benefit of a reduced sentence through his plea agreement); *United States v. Robinson*, No. 16-cr-185, 2019 WL 4202435, at *5 n.7 (W.D. Pa. Sept. 5, 2019) (collecting similar cases).

[27] And given the record before it in this case, the Court concludes that were it to hold otherwise, it would be imposing the blanket duty to consult with a defendant that the Supreme Court expressly eschewed in *Flores-Ortega*. This case, however, aptly illustrates the gap created by the lack of a *per se* rule—this Court concludes that Mr. Clancy reasonably demonstrated his interest in appealing, and that Mr. Haber was similarly not unreasonable in not knowing of that interest, and therefore in not consulting with Mr. Clancy on that topic. And yet, despite the reasonable actions of both the defendant and his counsel, Mr. Clancy lost access to an appeal which this Court concludes that he otherwise would have taken. It is perhaps this case, therefore, which might suggest the re-examination of the *Flores-Ortega* framework, especially given the Supreme Court's reaffirmation in *McCoy v. Louisiana* that the decision as to whether to appeal is reserved exclusively to the defendant in a criminal case. 138 S. Ct. 1500, 1508 (2018) (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).

in Mr. Clancy's position would have wanted to appeal. According, Mr. Clancy's Motion to Vacate

(ECF No. 86) is DENIED.

s/ Mark R. Hornak

Mark R. Hornak
Chief United States District Judge

Dated:  December 21, 2021

cc:      All counsel of record